IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOEL WHITE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-389-M-BN |
| | § | |
| TAVIN SPIKES, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b). Defendant Tavin Spikes has moved for summary judgment pursuant to the Court's order [Dkt. No. 17] requiring a motion to address his affirmative defense of qualified immunity, *see* Dkt. Nos. 19 & 20, to which Plaintiff Joel White has responded, *see* Dkt. No. 25. The undersigned now issues the following findings of fact, conclusions of law, and recommendation:

**Background**

On January 31, 2014, Plaintiff, proceeding *pro se* and *in forma pauperis*, *see* Dkt. No. 7, filed this civil rights action against his parole officer, Defendant Spikes, alleging that his civil rights are being violated because he is required to attend a religious-based substance abuse program as a condition of his parole, *see* Dkt. No. 2. Defendant filed an answer, in which he pleads the affirmative defense of qualified immunity. *See* Dkt. No. 16.

-1-

The Court determined that Defendant's affirmative defense of qualified immunity should be decided on an expedited basis by way of summary judgment, *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991), and ordered Defendant to file a motion for summary judgment on his affirmative defense of qualified immunity, *see* Dkt. No. 17. Through the same order, discovery was stayed pending a ruling on the motion, but the Court notified Plaintiff that it would issue a further order setting forth procedures and deadlines for any possible request for limited discovery and for Plaintiff's response to Defendant's motion for summary judgment. *See id.* (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.")).

Defendant timely filed his motion for summary judgment. *See* Dkt. Nos. 19 & 20. But that motion includes arguments and evidence reaching beyond the issue of qualified immunity. The Court then notified Defendant that it will consider only the qualified immunity arguments set forth in his Brief in Support of Motion for Summary Judgment at Section E [Dkt. No. 20 at 7-20] but that, in the event that Plaintiff's claims against Defendant survive summary judgment on the issue of qualified immunity, the Court will enter an order directing further proceedings to resolve the additional issues raised by Defendant in his motion for summary judgment. *See* Dkt. No. 22. Through the same order, Plaintiff was given until August 29, 2014 to file a motion for leave to conduct discovery or inform the Court that he does not need to conduct discovery to respond to Defendant's summary judgment motion. *See id.*

On September 15, 2014, because Plaintiff failed to file motion or notice concerning discovery by August 29, 2014, the Court ordered Plaintiff to respond to the summary judgment motion by October 15, 2014. *See* Dkt. No. 23. After Plaintiff failed to respond by that deadline, the Court, on October 22, 2014, extended the response deadline to October 31, 2014 and the reply deadline to November 17, 2014. *See* Dkt. No. 24. Plaintiff filed a response on October 30, 2014, *see* Dkt. No. 25, and Defendant did not file a reply, and his time to do so has passed, *see* N.D. Tex. L. Civ. R. 7.1(f).

The undersigned now concludes that Defendant's motion for summary judgment as to his affirmative defense of qualified immunity, *see* Dkt. No. 19; Dkt. No. 20 at 7-20, should be denied because it has not been shown that Defendant is entitled to qualified immunity.

## Legal Standards

"The doctrine of qualified immunity shields 'government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Luna v. Mullenix*, 765 F.3d 531, 536 (5th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)) (internal quotation marks omitted).

While review of a motion for summary judgment based on qualified immunity

is accomplished in two steps, a court may conduct the following examination "in any order." *Luna*, 765 F.3d at 536 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

One prong of the analysis is "whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a federal constitutional or statutory right." *Id.* (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). Put another way, the question is "whether the plaintiff has alleged a violation of a constitutional right." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008).

The other prong is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna*, 765 F.3d at 536 (quoting *Flores*, 381 F.3d at 395). Even if the government official's conduct violates a clearly established right, the official is entitled to immunity if his conduct was objectively reasonable. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008). Taken together, this prong of the analysis requires the Court to determine "whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." *Charles*, 522 F.3d at 511; *see also Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) ("The dispositive inquiry, we have said, is whether it would have been clear to a reasonable officer in the [defendant's] position that [his or her] conduct was unlawful in the situation [he or she] confronted." (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal quotation marks and brackets omitted from original))); *Castillo v. City of Weslaco*, 369 F.3d 504, 506 (5th Cir. 2004) (per curiam) ("The court must first identify the relevant clearly established law[ and

t]hen ... determine whether the defendant's actions were objectively reasonable." (citing *Petta v. Rivera*, 133 F.3d 330, 334 (5th Cir. 1998))).

As to whether the law at the time of an incident was clearly established, even if a court assumes each right asserted by a plaintiff did apply in his or her case, each right must be defined at the appropriate level of specificity for a court to determine that the right was "clearly established." *Cf. Kerr v. Puckett*, 967 F. Supp. 354, 359 (E.D. Wis. 1997) ("A key determination in [the qualified immunity] analysis is the level of generality for courts to apply in identifying which legal rights are clearly established." (citation omitted)). While "'a case directly on point'" is not required to "conclud[e] that the law is clearly established, '[ ] existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 134 S. Ct. at 5 (quoting *al-Kidd*, 131 S.Ct. at 2085). A court, moreover, may not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 131 S. Ct. at 2084). And, as the Fifth Circuit, has summarized, "[t]he *sine qua non* of the clearly-established inquiry is 'fair warning[,]'" which requires a court to ask 'not only whether courts have recognized the existence of a particular constitutional right, but also ... whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc) (respectively quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (en

banc) (per curiam)).

Once a defendant invokes his entitlement to qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon*, 305 F.3d at 323; *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks omitted)); *see also Brooks v. City of West Point*, 18 F. Supp. 3d 790, 794 (N.D. Miss. 2014) ("The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense." (citing *Gates v. Tex. Dep't of Prot. & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008))).

"[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. Therefore, even where the qualified immunity defense is raised by motion for summary judgment, a court "must first determine whether the allegations in [the] complaint are sufficient to negate [the] assertions of qualified immunity." *Fleming v. Tunica County*, 497 F. App'x 381, 388 (5th Cir. Oct. 5, 2012) (per curiam) (citing *Backe*, 691 F.3d at 648; *Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir.1995)). This "demands more than bald allegations and conclusionary statements." *Wicks*, 41 F.3d at 995. A plaintiff "must allege facts specifically focusing on the conduct of [the defendant] which caused his injury." *Id.* "In the summary-judgment posture, the Court 'looks to the evidence before

it (in the light most favorable to the plaintiff).'" *Brooks*, 18 F. Supp. 3d at 795 (quoting *McClendon*, 305 F.3d at 323 (in turn quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996))) (internal quotation marks omitted).

The qualified immunity defense is appropriately resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of conduct or (2) the court "skip[s], for the moment, over ... still-contested matters to consider an issue that would moot their effect if proved." *Harlow*, 457 U.S. at 818; *see also Haverda v. Hays County*, 723 F.3d 586, 599 (5th Cir. 2013). "'If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability ..., and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment.'" *Haverda*, 723 F.3d at 599 (quoting *Barker v. Norman*, 651 F.2d 1107, 1123-24 (5th Cir. Unit A July 1981)). Although summary judgment ultimately may be appropriate based on a plaintiff's inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id.*

## Analysis

In his complaint, Plaintiff alleges that, as a condition of his parole, he "agreed to participate in a substance abuse treatment program" and, in 2013, he "attended Overcomers Substance Abuse Treatment about 9 or 10 times" and "realize[d] Overcomers is teaching Christianity." Dkt. No. 2 at 1. Plaintiff further alleges that, as part of the program, he has had to recite The Lord's Prayer. *See id.*

Plaintiff states that he wrote to the Texas Board of Pardons and Parole (the "BPP") to complain. *See id.* at 1-2. Plaintiff attaches to his complaint the BPP's November 18, 2013 response to his November 4, 2013 letter, *see id.* at 3, which in substance provides:

> This basis for your letter appears to be the contention that the [BPP] is requiring you to attend a religious based substance abuse treatment program. Please be advised that BPP does not specify a particular program that an offender must attend to be in compliance with the conditions of release. Your parole officer should work closely with you to place you in a particular program. Parole Officers do not fall under BPP, they are part of the Texas Department of Criminal Justice (TDCJ).
>
> If you feel you are being required to attend a religious based program that may be in contrast to your beliefs then your parole officer is the person you need to speak with about attending a different program. I am forwarding your letter and my response to the appropriate parties within the TDCJ-Parole Division so that they may be aware of your concerns.

*Id.*

Plaintiff alleges that, when he presented the letter to Defendant, Defendant told him that the letter had nothing to do with Overcomers and that, if Plaintiff did not attend the program, Defendant would "write eight violations on [him]." *Id.* at 2. Plaintiff then states that it is his belief that Defendant "is using his authority to force me to attend a Christianity program." *Id.*

In stating his right to qualified immunity, Defendant admits that "[t]he Overcomers substance abuse program is an Alcoholics Anonymous program, which is a 12-step program." Dkt. No. 20 at 13 (citing Dkt. No. 20-2 at 10-11 (Plaintiff's attendance records from Overcomers)). But, through a sworn affidavit, he contends that "Overcomers is not a faith-based program":

-8-

I suspect that some participants in any Overcomers program may discuss their faith as a reason or tool in their recover [sic]. Every person recovering from substance abuse will address their problem in a different way; for some, their faith has a substantial role in their substance abuse. The fact that some participants may discuss faith or pray during Overcomers meetings does not indicate that any participant is required to discuss faith or participate in a religion-based exercise.

...

One of the conditions of [Plaintiff]'s parole, as imposed by [BPP], is that he complete a substance abuse program. Participation in any 12-Step substance abuse program will satisfy this parole requirement. I informed [Plaintiff] that he could attend any 12-Step program of his choice. It is part of my job to help offenders adhere to and satisfy their parole requirements. One of the available programs in my area is Overcomers. Overcomers is not a faith-based program and has no religious affiliation. According to [Plaintiff]'s file, he has attended several Overcomers meetings to satisfy his parole requirement. Since March 15, 2013 when I was assigned to his case [Plaintiff] has not received a violation or parole revocation for failing to attend a substance-abuse program. [Plaintiff] has been given several opportunities to find his own 12-Step substance abuse program, but he has never suggested or inquired about any program. [Plaintiff] and I discussed him attending a program offered at the Bridge Homeless shelter, but he has never attended a meeting or class there. At any time if [Plaintiff] wants to attend a different program, he need only report which program he will attend. He has never attempted to do so. However, [Plaintiff] may not simply stop attending Overcomers without replacing it with a different program; if he does not attend any program, then he will be in violation of a condition set forth by the [BPP].

Dkt. No. 20-3 at 2-3.

To counter Plaintiff's allegation that he has been forced into a program that is religiously-based, Defendant relies, at least in part, on *Feasel v. Willis*, 904 F. Supp. 582 (N.D. Tex. 1995), in which this Court held that "the Alcoholics Anonymous Program has been held not to be a religious indoctrination, but an acceptable rehabilitation program" and, moreover, "it was in February 1994, [not] 'clearly

established,' [that] required participation in the Alcoholics Anonymous 12-Step Program violated the First Amendment right to freedom of religion." *Id.* at 586 (relying on *Stafford v. Harrison*, 766 F. Supp. 1014, 1016 (D. Kan. 1991); *O'Connor v. State of California*, 855 F. Supp. 303 (C.D. Cal.1994)).

But the 2013 conduct of which Plaintiff complains occurred more than 19 years after *Feasel*. And, while neither this Court nor the United States Court of Appeals for the Fifth Circuit have ever cited *Feasel*, the constitutional issue discussed there and raised by Plaintiff's claim – coercing prisoners and parolees to participate in an Alcoholics Anonymous-like 12-Step Program – has been analyzed thoroughly by courts outside the Fifth Circuit. *See Cain v. Caruso*, No. 08-CV-14699-DT, 2009 WL 2475456, at *11 (E.D. Mich. Aug. 11, 2009) ("[B]ecause of the religious focus of the [Alcoholics Anonymous/Narcotics Anonymous] programs, forcing prisoners and parolees into such programs violates their clearly established constitutional rights." (citing *Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007); *Warner v. Orange Cnty. Dep't of Probation*, 115 F.3d 1068, 1075 (2d Cir. 1997) (describing such programs as made up of "intensely religious events"), *aff'd*, 173 F.3d 120 (2d Cir. 1999), *cert. denied sub nom.*, 528 U.S. 1003 (1999); *Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir. 1996) (describing them as "fundamentally based on a religious concept of a Higher Power")); *see also United States v. Logins*, 503 F. App'x 345, 352 n.4 (6th Cir. Oct. 26, 2012) ("Although we hold that it is permissible for a district court to leave the probation officer discretion to select a substance abuse treatment program, that discretion is of course limited by the defendant's other substantive rights. For example, a probation officer may not abuse

his or her discretion by requiring a defendant on supervised release to participate in a faith-based substance abuse treatment program which is inappropriate given the defendant's religious beliefs." (citations omitted)); *Hazle v. Crofoot*, 727 F.3d 983, 996 (9th Cir. 2013) (discussing *Inouye*'s conclusion "that a parolee's right to be free from coerced participation in a religious treatment program was a matter of 'uncommonly well-settled case law' that was 'enough for [the Ninth Circuit] to hold that the law was clearly established sufficient to give notice to a reasonable parole officer, in 2001'" (quoting *Inouye*, 504 F.3d at 716)); *Thorne v. Hall*, No. 1:08cv601 (JCC), 2009 WL 890136, at *16 (E.D. Va. Mar. 26, 2009) (noting the lack of binding Fourth Circuit precedent but concluding that "[t]oo many courts have found similar allegations of forced compliance with religious addiction treatment programs constitutionally problematic for [either defendant] to claim that she was not on notice of a potential constitutional violation"); *accord Hanas v. Inner City Christian Outreach, Inc.*, 542 F. Supp. 2d 683, 701 (E.D. Mich. 2008).

To determine "whether [Defendant's] actions violated clearly established statutory or constitutional rights of which a reasonable person would have known," *Luna*, 765 F.3d at 536, this Court must determine whether Defendant "acted reasonably in the particular circumstances that he ... faced," *Plumhoff*, 134 S. Ct. at 2023. As to the issue now before the Court, clearly established precedent holds that participation by a prisoner or parolee in an Alcoholics Anonymous-like 12-Step Program is only "constitutionally problematic," *Thorne*, 2009 WL 890136, at *16, when such participation is compelled, *compare Inouye*, 504 F.3d at 713 ("Here, [the parole

officer] is alleged to have required Inouye to attend a program rooted in religious faith and then recommended revoking his parole because he refused to participate. The Second and Seventh Circuits have found compelling prisoners and probationers to participate in AA/NA under similar circumstances unconstitutionally coercive." (citing *Warner*, 115 F.3d 1068; *Kerr*, 95 F.3d 472)), *with id.* at 717 n.16 ("We do not decide when, if at all, non-coercive state endorsement or encouragement of participation in AA/NA or other religion-based programs is unconstitutional or when, if ever, a parole officer simply allowing or encouraging, but not requiring, such participation would lose qualified immunity."); *see also Goodwin v. Hamilton*, No. 10–cv–11909, 2011 WL 893118, at *4 (E.D. Mich. Mar. 14, 2011) ("For there to be a constitutional violation, [ ] the plaintiff must object to attending the program on religious grounds and be forced to attend over objection. Otherwise there is no coercion and consequently no constitutional violation. Where there are secular alternatives to NA/AA that the plaintiff may attend, there can be no coercion."); *O'Connor v. California*, 855 F. Supp. 303, 308 (C.D. Cal. 1994) ("Significant to this Court's decision [to grant summary judgment to the defendants] is that the individual has a *choice* over what program to attend. Rational Recovery is a viable, although less frequently offered, self-help program that does not use any concept of 'spirituality' to treat alcohol-related problems. Moreover, individuals who do not want to attend either Alcoholics Anonymous or Rational Recovery may devise their own means of 'self-help' and seek approval from the County. Given this array of options, it cannot be said that the State and County are endorsing the religious message of AA rather than promoting the

-12-

concept of 'self-help.'" (emphasis in original) (cited and distinguished by, for example, the courts in *Inouye*, 504 F.3d at 716 (the facts in "*O'Connor* does not speak to the coercion issue") and *Kerr*, 95 F.3d at 480 (in *O'Connor*, "the court found no violation because the AA program was one of a variety of options available ..., any of which would satisfy the condition of his probation ... the only choice available to Kerr was the NA program"))).

The clearly established precedent establishes that coercion is shown if a prisoner or parolee has no choice but to attend the religiously-based substance abuse program – that is, there is not a reasonable secular alternative program – and/or faces significant penalties if he or she refuses to attend the religiously-based program. *See, e.g.*, *Kerr*, 95 F.3d at 479 ("prison officials required inmates to attend NA meetings (at the very least, to observe)"; plaintiff "was subject to significant penalties if he refused to attend the NA meetings"); *Warner*, 115 F.3d at 1075 ("There can be no doubt [ ] that Warner was coerced into participating in these religious exercises by virtue of his probation sentence. Neither the probation recommendation, nor the court's sentence, offered Warner any choice among therapy programs. The probation department's policy, its recommendation, and its printed form all directly recommended A.A. therapy to the sentencing judge, without suggesting that the probationer might have any option to select another therapy program, free of religious content. Once sentenced, Warner had little choice but to attend the A.A. sessions. If Warner had failed to attend A.A., he would have been subject to imprisonment for violation of probation. Had Warner been offered a reasonable choice of therapy providers, so that he was not compelled by

-13-

the state's judicial power to enter a religious program, the considerations would be altogether different." (citations omitted)).

In support of summary judgment on his affirmative defense of qualified immunity, Defendant presents evidence – sworn testimony – to show that (1) since March 15, 2013, Plaintiff "has not received a violation or parole revocation for failing to attend a substance-abuse program"; (2) Plaintiff "has been given several opportunities to find his own 12-Step substance abuse program, but he has never suggested or inquired about any program"; and (3) Defendant discussed with Plaintiff the possibility of attending programs other than Overcomers to meet the required condition of his parole. *See* Dkt. No. 20-3 at 2-3. This evidence is also at least somewhat consistent with the response that Plaintiff received from the BPP, which Plaintiff attached to his complaint. *See* Dkt. No. 2 at 3 ("Please be advised that BPP does not specify a particular program that an offender must attend to be in compliance with the conditions of release.").

But the problem for Defendant – or why he is not entitled to qualified immunity – is that this evidence conflicts with a specific allegation of fact from which the Court is able infer that Defendant is liable for the harm Plaintiff alleges. *See Backe*, 691 F.3d at 648; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). Plaintiff has alleged that Defendant threatened retaliation against him if he did not attend a particular program, Overcomers, which Plaintiff alleges is religiously-based. *See* Dkt. No. 2 at 2 (alleging that Defendant threatened that, if Plaintiff did not attend the program, Defendant would "write eight violations on [him]"). Indeed, according to the BPP's

November 18, 2013 letter, it is Defendant's responsibility, as Plaintiff's parole officer, to shepherd Plaintiff to a particular substance abuse program. *See id.* at 3 ("Your parole officer should work closely with you to place you into a particular program.... If you feel that you are being required to attend a religious based program that may be in contrast to your beliefs[,] then your parole officer is the person you need to speak with about attending a different program."). Thus, according to Plaintiff's nonconclusory version of events, the official responsible for placing him into a particular program threatened penalties against him if he did not attend Overcomers. At the time of Plaintiff's alleged harm, in 2013, attempting to compel a parolee to participate in a religiously-based substance abuse program was not objectively reasonable based on the then-clearly established law.

As to any contention by Defendant that Plaintiff's specific allegation of coercion should not be believed, as stated above, summary judgment as to the qualified immunity defense is "inappropriate" "if there are conflicting versions of [Defendant's] conduct, one of which would establish and the other defeat liability." *Haverda*, 723 F.3d at 599 (quoting *Barker,* 651 F.2d at 1123-24). And, at this early stage of the case where only qualified immunity is at issue on the court-ordered summary judgment motion, an assertion that Plaintiff has failed to create a genuine dispute of material fact as to whether Defendant actually engaged in the allegedly coercive conduct is misplaced, where, even if summary judgment ultimately may be appropriate based on an inability to prove the facts essential to recovery, this "has nothing to do with the qualified immunity defense." *Id.*

**Recommendation**

Defendant's motion for summary judgment as to his affirmative defense of qualified immunity, see Dkt. No. 19; Dkt. No. 20 at 7-20, should be denied, and his Motion for Summary Judgment [Dkt. No. 19] should be terminated, because it has not been shown that Defendant is entitled to qualified immunity.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 9, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE